UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| OTTLITE TECHNOLOGIES, INC., ) <br> ) <br> ) <br>   Plaintiff, ) <br> v.  ) <br> ) <br> VERILUX, INC., ) <br> ) <br>   Defendant. ) <br> _____) | Case No. 8:09-cv-608 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VERILUX, INC.'S
MOTION TO DISMISS OR TRANSFER TO THE DISTRICT OF CONNECTICUT**

I. **INTRODUCTION**

Defendant Verilux, Inc. ("Verilux") submits this memorandum in supports of its Motion to Dismiss or Transfer to the District of Connecticut Defendant OttLite Technologies, Inc.'s ("OttLite") complaint as the exercise of jurisdiction under the Declaratory Judgment Act in Florida is inappropriate.

The circumstances of this case show that OttLite filed this action to preserve its option to litigate the parties' dispute in Florida in the event litigation was initiated elsewhere. OttLite did not file the Florida action with the intent to actually initiate litigation seeking declaratory relief. After purporting to seek declaratory relief by preemptively filing its complaint in Florida, OttLite showed no interest in actually serving its complaint and initiating the Florida action until *after* Verilux filed a complaint in Connecticut and served process on OttLite.

Using the tools of the Declaratory Judgment Act in this manner – for the sole purpose of preserving a particular forum choice and not for the purpose of seeking declaratory relief – is abusive and outside the purpose of the Act. Such behavior by OttLite calls for this court to dismiss or transfer this action. Case law applying the Declaratory Judgment Act discourages purely preemptive forum shopping as OttLite has done here, and strongly discourages such abuse of the Act.

In addition, the balance of the convenience demonstrates that the Connecticut action should proceed rather than the present suit before this Court. As explained herein, Verilux is the true plaintiff in this dispute, the court in the District Court of Connecticut has subpoena power over a critical witness that this court does not, and a number of events relevant to the dispute occurred in Connecticut.

## II. STATEMENT OF FACTS

### A. VERILUX IS A CONNECTICUT CORPORATION

Verilux is a Connecticut corporation that designs, develops, manufactures, and sells lighting products. (Declaration of Nicholas Harmon ("Harmon Decl.") ¶ 1). Verilux ships all its products out of Connecticut, receives all warranty claims in Connecticut, and has a call center in Connecticut. (Harmon Decl. ¶¶ 3, 4). Verilux also has a place of business in Vermont where its corporate office is within 255 miles driving distance to the District Court of Connecticut. (Harmon Decl. ¶ 2). Verilux is the assignee of U.S. Patent No. 7,484,867 ("the '867 patent"), which relates to a Configurable Lamp Set sold by Verilux through its Connecticut warehouse. (Harmon Decl. ¶ 5). Verilux maintains its documentation related to the design, development, manufacture, and sale of its products at its Vermont facility. (Harmon Decl. ¶ 6).

The subject matter of the '867 patent was invented by a former employee of Verilux, Edmund Farmer. (Harmon Decl. ¶ 7). Mr. Farmer currently resides in Fairfield, Connecticut and is employed by Product Ventures, LTD located at 55 Walls Drive, Fairfield, Connecticut 06824. (Id.).

### B. OTTLITE RACED TO THE COURTHOUSE TO FILE ITS COMPLAINT IN THE FLORIDA ACTION AND DID NOT SERVE ITS COMPLAINT UNTIL AFTER VERILUX FILED AND SERVED OTTLITE WITH ITS COMPLAINT IN THE CONNECTICUT ACTION

At the close of prosecution of the '867 patent Verilux became aware of OttLites's 3-in-1 Craft Lamp, which would infringe one or more claims of the '867 patent, if it were allowed. After the '867 patent issued on February 3, 2009, counsel for Verilux sent a notice letter dated February 19, 2009 to OttLite's President. (Notice Letter, appended to the Declaration of Michael Kosma, Esq. ("Kosma Decl.") as Ex. A). Verilux notified OttLite that their "3-in-1 Craft Lamp" appeared to infringe a number of claims of the '867 patent, including, for example, Claims 1-16, 20, and 22-30. (Id.). Verilux provided OttLite with a date by which it expected a response to the stating,

> Unless we receive a response to our letter by March 18, 2009, we shall assume that OttLite does not wish to resolve this matter in an amicable business manner Verilux shall consider appropriate action to enforce its intellectual property rights.

(Id.) On the morning of March 18, 2009, Christopher Paradies, OttLite's counsel, called Verilux's counsel and informed them that he was meeting with his client, OttLite, and would not be able to respond until the following week. (E-mail from Daniella Crimi, Wesley W. Whitmyer, Jr. Esq.'s Administrative Assistant, to Wesley W. Whitmyer, Jr. Esq. and Steven B. Simonis Esq., Counsel for Verilux, *Telephone Message re 03031-I0168A* (Mar. 18, 2009) appended to Kosma Decl. as Ex. B). Instead of responding to Verilux's letter, OttLite filed a declaratory judgment complaint in the Middle District of Florida on March 31, 2009. (Dkt. #1). Rather than serving Verilux with the complaint, counsel for OttLite sent counsel for Verilux a letter on April 2, 2009 and attached the filed declaratory judgment complaint. (Paradies Letter, appended to Kosma Decl. as Ex. C). In its

3

letter, OttLite made boilerplate allegations that Verilux's patent is invalid and "recommend[ed] that Verilux, Inc. immediately agree in writing to release OttLite Technologies, Inc. from any and all liability and to covenant not to sue OttLite Technologies, Inc., its vendors, distributors and customers for infringement of U.S. Pat. No. 7,484,867, now and in the future." (Id.). OttLite further stated that the complaint had not yet been served and"[unless] we receive a response to our letter by April 17, 2009, we shall assume that Verilux, Inc. does not wish to resolve this matter amicably." (Id.).

OttLite's artificial deadline of April 17, 2009 passed without Verilux being served. OttLite was obviously using the filed, but yet to be served, complaint as a negotiation tactic /bargaining chip with no intention of serving Verilux. Verilux subsequently filed its complaint in Connecticut on May 4, 2009 and promptly executed personal service on OttLite on May 7, 2009. (*See* Verilux's Complaint for Infringement, appended to Kosma Decl. as Ex. D; Connecticut Return of Service, appended to Kosma Decl. as Ex. E). In apparent response to Verilux filing its Complaint, OttLite finally filed its summons, the day after Verilux filed its Complaint, on May 5, 2009. (Dkt. # 14). However, actual personal service on Verilux was not completed until May 21, 2009, more than 7 weeks after the Complaint was filed, and almost a month after OttLite's supposed April 17th deadline. (Dkt. #14).

OttLite answered Verilux's Complaint in Connecticut and filed a motion to transfer the Connecticut action on May 27, 2009. Verilux's opposition has been filed simultaneously with this present motion, arguing that OttLite's motion should be denied for the same reasons presented to this Court.

## III. ARGUMENT

### A. OTTLITE'S DECLARATORY JUDGMENT ACTION WAS ANTICIPATORY AND IMPROPER, A SPECIAL CIRCUMSTANCE WARRANTING DEPARTURE FROM THE FIRST-TO-FILE RULE

The Court should grant Verilux's motion to dismiss or transfer because the declaratory judgment suit filed by OttLite in this Court was anticipatory and an attempt by OttLite to engage in procedural fencing. OttLite has argued that this action should prevail over the Connecticut action because of the "first-to-file" rule, however, this reliance is misplaced. This rule does not apply in this case because OttLite's race to the courthouse to file its Declaratory Judgment action in its home forum constitutes a special circumstance that gives priority to the later-filed action.

1. Applicable Legal Standards

The Declaratory Judgment Act provides a court with discretion in deciding whether to allow a case to continue or whether to transfer it to another venue. As stated by the Supreme Court in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995):

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a) (1988 ed., Supp. V)
> *Id.* at 286 (emphasis in original.)

The Court in *Wilton* further explained that:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants… In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Id.* at 288

5

The "relationship between an action under this act for a declaration of patent rights and a later-filed infringement suit" is governed by Federal Circuit precedent. *Serco Services co., L.P. v. Kelley, Co., Inc.*, 51 F.3d 1037 (Fed. Cir. 1995). The court in *Serco* affirmed the dismissal of a case seeking declaratory relief in favor of a later filed case for patent infringement in another forum. *Id.* at 1037-38. In affirming the dismissal of the first-filed declaratory action, the Federal Circuit stated that "even if a case satisfies the actual controversy requirement, there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Id.* at 1039. "It is appropriate, therefore, for a district court to examine whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996) *overruled in part on other grounds, MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

It is recognized that a court can dismiss a first-filed declaratory action when the action was anticipatory or preemptive, *i.e.*, when the first-filed suit was filed in response to notice of a planned suit received from the other party, setting off a race to the courthouse. *Davox Corp. v. Digital Systems Int'l Inc.*, 846 F.Supp. 144 (D. Mass. 1993); *Federal Insurance Co. v. May Dep't Stores Co.*, 808 F. Supp. 347, 349-351 (S.D.N.Y. 1992); *Cooperative Centrale Raiffeisen-Boerenleen Bank B.A. v. Northwestern Nat. Ins. Co. of Milwaukee, Wisconsin*, 778 F.Supp. 1274, 1278-1279 (S.D.N.Y. 1991); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978). When the declaratory plaintiff preemptively files an action, the "first-filed preference, of course, is not to be given great weight." *Lexington Insurance Co. v. City of Phoenix, AZ*, 1996 WL 463672, *1 (D. Mass. 1996) (dismissing a declaratory action that was filed during business negotiations but not served until after the defendant filed an action in another district and stating that "the

importance of discouraging anticipatory litigation is widely recognized"); *See also Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1160 (W.D.N.Y. 1987). Essentially, the benefit of the first-to-file rule will not be available to a party who "races to the courthouse" in order to obtain a sort of 'home-field advantage' as soon as that party believes that litigation is imminent. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978), citing Justice Brennan's dissent in *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 694, 27 L.Ed.2d 701 (1971) ("[t]he federal declaratory judgment is not a prize to the winner of a race to the courthouses.").

Further, courts have dismissed declaratory judgment actions when the filing under the Act is being pursued not for the purpose of seeking a declaration of rights, but for the improper purposes of procedural fencing or posturing for negotiations. For instance, in *EMC,* the Federal Circuit affirmed the district court's dismissal of the declaratory plaintiff's action on the grounds that "the district court could properly view the declaratory judgment complaint as a tactical measure filed in order to improve [the declaratory plaintiff's] posture in the ongoing negotiations-not a purpose that the Declaratory Judgment Act was designed to serve." *EMC Corp.*, 89 F.3d at 815; see also *Albie's Foods, Inc. v. Menusaver, Inc.*, 170 F. Supp. 2d 736 at 739-740 (E.D.Mich. 2001) (dismissing the first filed declaratory action in favor of the second filed action and holding that the declaratory plaintiff engaged in procedural fencing because service of process was delayed, indicating that declaratory action was filed to preserve plaintiff's right to litigate in his home district.); *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir. 1985) (affirming dismissal of first filed suit as anticipatory based on plaintiff's unexplained delay of service on defendant until after defendant had filed and served plaintiff with its own complaint); *McJunkin Corp. v. Cardinal Systems, Inc.*, 190 F. Supp. 2d 874, 879 (S.D.W.Va. 2002) (dismissing a first filed declaratory action that was filed during business negotiations in

7

which plaintiff did not initially serve the complaint or advise the defendant of its existence, only to serve the complaint after the defendant filed and served a complaint in another district, and noting that the complaint was "held in Plaintiffs' hip pocket to preempt Defendants' potential breach of contract action"); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F.Supp.2d 271, 274 (W.D.N.Y. 2001) (while dismissing the first filed action for lack of case or controversy, noting that the court would decline to exercise jurisdiction in the alternative because the declaratory plaintiff "sent a letter to [the defendant] advising him that the complaint had been filed, but also suggesting that the parties attempt to settle the dispute… It appears, then, that this action was designed in part as a weapon to strengthen [plaintiff's] hand in any negotiations"); *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F.Supp.2d 1265, 1271 (S.D. Cal. 2007) (while dismissing the first filed action for lack of case or controversy, noting that the court would decline to exercise jurisdiction in the alternative because "the Court suspects [that the declaratory complaint's] use is more a bargaining chip than a sincere prayer for relief.").

Thus, courts have found that actions seeking declaratory judgments that are either anticipatory or that constitute procedural fencing are contrary to the objectives of the Declaratory Judgment Act and have dismissed such actions.

2. OttLite Raced to the Courthouse to File its Preemptive Declaratory Judgment Action in Florida

OttLite's declaratory judgment action filed in this Court is precisely the type of anticipatory suit that is disfavored by courts. After receiving the February 19th notice letter sent by Verilux's patent counsel, OttLite did not attempt to respond to by Verilux's March 18th deadline. Instead, OttLite's counsel called on the day of the deadline and requested an extension. Verilux, under the impression that OttLite would reply if given an extension, chose to give OttLite additional time to respond. Instead of using this time to respond, OttLite raced to the courthouse and filed an

8

anticipatory declaratory action with this Court. As noted in OttLite's correspondence, OttLite clearly sought the benefit of the first-to-file rule (Ex. C) to secure its home forum and undoubtedly believed that its anticipatory filing would further benefit it in the negotiations it sought. OttLite's attempt to reserve a place in its home forum for litigation is an abuse of the Declaratory Judgment Act.

OttLite's intention to engage in procedural fencing is confirmed by the fact that OttLite did not serve the complaint after filing, or even after their imposed deadline, but instead OttLite pursued summons to serve their complaint a day after Verilux filed its complaint. Further, OttLite failed to serve Verilux until 2 weeks after it had already been served with Verilux's complaint. However, "[t]he Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions. In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action." *Federal Insurance Co.*, 808 F. Supp. at 350.

OttLite's improper conduct, warrants dismissal or transfer in the present case in favor of Verilux's action for infringement in Connecticut.

B. THE BALANCE OF CONVENIENCE FAVORS CONNECTICUT

This Court should also decline to exercise jurisdiction under the Declaratory Judgment Act since the balance of convenience warrants giving priority to the Connecticut action over this action. *See, e.g., Everest Capital Ltd. v. Everest Funds Management, LLC*, 178 F.Supp.2d 459 (S.D.N.Y. 2002). In addition, the balance of convenience warrants transferring this action to Connecticut pursuant to 28 U.S.C. § 1404(a). The factors relevant to the analysis of the balance of convenience between two lawsuits in two different forums include: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the interests of justice. *Jasper Corp. v. National*

*Union fire Ins. Co. of Pittsburgh, Pa.*, 1999 WL 781808 *4 (M.D. Fla 1999); *See American Aircraft Sales International, Inc. v. Airwarsaw, Inc.*, 1999 WL 503965, *3 (M.D. Fla 1999) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)); *See also, Everest Capital Ltd.* 178 F.Supp.2d at 465; *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y.1994).

1. The Convenience of the Witnesses

Neither the District of Connecticut nor the District of Florida will be substantially more convenient for potential party witnesses; however, there is an important non-party witness for whom a court's subpoena power may become necessary to obtain their testimony.

OttLite has brought claims in this action and counterclaims in the Connecticut action seeking a declaration that the '867 patent is invalid and a declaration that the '867 patent is unenforceable. (Dkt. #11; Kosma Decl. Ex. C). Verilux will undoubtedly seek the testimony of the inventor of the subject matter of the '867 patent in defense of OttLite's claims. However, the inventor, Edmund Farmer, resides and works in Fairfield, Connecticut, which is within the District of Connecticut and NOT within the subpoena power of this Court.

Thus, while the convenience of party and expert witnesses may not militate in favor of either district, the location of at least one key non-party witness militates in favor of proceeding in the District of Connecticut. Since this non-party witness is outside of the subpoena power of this Court but within the subpoena power of the court in Connecticut it would serve the interests of justice to transfer the case to Connecticut. *See Broad. Data Retrieval Corp. v. Sirius Satellite Radio*, Inc., 79 U.S.P.Q. 2d 1603, 1605 (C.D. Cal. 2006) (in granting motion to transfer to New York the court weighed in the defendants favor the fact that two important non-party witnesses, the inventor of the patent at issue and the patent attorney who prosecuted the patent in front of

the USPTO, could not be compelled to testify if the case remained in the district.); *Fleming v. Ford Motor Co.,* 2006 WL 566109 (D.D.C. 2006) (granting defendant's motion to transfer case to Eastern District of Michigan, while denying plaintiff's motion to transfer to the District of Arizona because "access to sources of proof at trial may well be compromised if this action is not transferred…" since some nonemployee key witnesses were subject to subpoena power in Michigan, the court stating that "[i]t would not serve the interest of justice to transfer a case to a venue where one or more key witnesses—in a matter that may well turn on the credibility of those witnesses—is beyond the reach of the court's compulsory process.").

Thus, the factors of convenience of witnesses and location of documents weigh in favor of the District of Connecticut.

2. The Convenience of the Parties

As discussed above, Connecticut is an important part of Verilux's operations and the forum in which a number of events that may be relevant to the claims of the parties occurred including the distribution of all of Verilux's products. The operative facts relating to Verilux's sale of patented products occurred in Connecticut. As a result, a significant number of facts that may be relevant to the claims at issue occurred in Connecticut, not Florida.

Further, documentary evidence and other materials, such as documentation related to the design, development, manufacture, and sale of its products, are maintained by Verilux. Materials that may be asserted to be relevant to the validity and/or enforceability of the '867 patent are most likely to be present at Verilux's offices. Thus, while documentary evidence related to issues of infringement may or may not be present in Florida, OttLite will undoubtedly seek evidence related to the prosecution of the application leading to the '867 patent and evidence related to the invention of the technology at issue.

11

3. <u>The Interests of Justice Favor Connecticut</u>

The interest of justice would be best served if this court dismisses or transfers this action given OttLite's tactics in preempting Verilux to secure a home forum and attempt to have an advantage in any settlement negotiations. OttLite's behavior should not be rewarded.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Verilux respectfully requests that the Court grant Verilux's motion to dismiss or transfer this action to the District of Connecticut.

Dated June 16, 2009

        Respectfully submitted,

        Verilux, Inc.

        By its attorneys,

        /s Matthew S. Nelles
        Matthew S. Nelles
        Florida Bar No.: 009245
        RUDEN, McCLOSKY, SMITH,
        SCHUSTER & RUSSELL, P.A
        200 East Broward Boulevard
        P.O. Box 1900
        Ft. Lauderdale, Florida 33302
        Phone: 954/527-2492; Fax: 954/333-4092
        Email: matt.nelles@ruden.com

        &

        Wesley W. Whitmyer, Jr.
        Steven Simonis
        Michael J. Kosma
        ST. ONGE STEWARD JOHNSTON & REENS LLC
        986 Bedford Street
        Stamford, Connecticut 06905-5619
        Telephone: (203) 324-6155
        Facsimile: (203) 327-1096
        Email: <u>litigation@ssjr.com</u>

Of Counsel
*Attorneys for Defendant*
*Verilux, Inc.*

### CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record on the following Service List, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Matthew S. Nelles
Matthew S. Nelles, Esq.

### SERVICE LIST

**Attorneys for Plaintiff**

Christopher Paradies, Ph.D., Esq.
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Boulevard, Suite 1700
Tampa, FL  33602
Tel:  (813) 222 1190
cparadies@fowlerwhite.com

Richard George Salazar, Esq.
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Boulevard, Suite 1700
Tampa, FL  33602
Tel:  (813) 228 7411
Fax: (813) 229 8313
rsalazar@fowlerwhite.com